10-17803/10-17878

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

BIG LAGOON RANCHERIA, a Federally Recognized Indian Tribe,

Plaintiff and Appellee/Cross-Appellant,

**v.**

STATE OF CALIFORNIA,

Defendant and Appellant/Cross-Appellee.

On Appeal from the United States District Court
for the Northern District of California

No. CV 09-1471 CW (JCS)
Hon. Claudia Wilken, District Judge

**APPELLANT/CROSS-APPELLEE STATE OF CALIFORNIA'S
MOTION FOR STAY PENDING APPEAL**

KAMALA D. HARRIS
Attorney General of California
SARA J. DRAKE
Senior Assistant Attorney General
RANDALL A. PINAL
Deputy Attorney General
State Bar No. 192199
  110 West A Street, Suite 1100
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 645-3075
  Fax: (619) 645-2012
  Email: Randy.Pinal@doj.ca.gov
*Attorneys for Appellant/Cross-Appellee*
*State of California*

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................. 1

Background .................................................................................................. 3

Legal standard ............................................................................................. 4

Argument .................................................................................................... 5

    I.    There is a fair chance the State will prevail on appeal and it could be irreparably injured without a stay ........................... 5

        A.    The State has a fair chance of success on appeal. .......... 5

            1.    The district court erred by precluding the State from demonstrating Big Lagoon lacked standing. ..................................................... 5

            2.    The district court erred in following *Rincon*. ....... 9

            3.    The district court misconstrued *Rincon* to require the State to make meaningful concessions to obtain environmental protection.  Nonetheless, the State offered valuable concessions to Big Lagoon. ................. 10

        B.    Without a stay, the State faces irreparable injury to its legitimate interests. ................................................. 13

    II.    The State's appeal raises serious legal questions and the balance of hardships tips sharply in the State's favor ............. 15

        A.    The State's appeal raises serious legal questions. ........ 16

        B.    The balance of hardships favors the State. ................... 18

    III.    The public interest would be served by granting the stay ....... 18

Conclusion .................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Alliance for Wild Rockies v. Cottrell*
    622 F.3d 1045 (9th Cir. 2010) ........................................ 5, 19

*Baker v. Gold Seal Liquors, Inc.*
    417 U.S. 467 (1974) ............................................................ 8

*Carcieri v. Salazar*
    129 S. Ct. 1058 (2009) ........................................................ 7

*Caribbean Marine Servs. Co., Inc. v. Baldridge*
    844 F.2d 668 (9th Cir. 1988) ............................................ 18

*Comanche Nation v. United States*
    393 F. Supp. 2d 1196 (W.D. Okla. 2005) ............................... 7, 16, 18

*Golden Gate Rest. Ass'n v. City and County of San Francisco*
    512 F.3d 1112 (9th Cir. 2008) .................................... 4, 5, 19

*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*
    531 F.3d 767 (9th Cir. 2008) .............................................. 6

*Herman v. South Carolina Nat'l Bank*
    140 F.3d 1413 (11th Cir. 1998) ........................................ 19

*Idaho v. Shoshone-Bannock Tribes*
    465 F.3d 1095 (9th Cir. 2006) .......................................... 14

*In re Indian Gaming Related Cases*
    331 F.3d 1094 (9th Cir. 2003) ................................... passim

*Kansas v. United States*
    249 F.3d 1213 (10th Cir. 2001) .......................... 6, 15, 16, 18

*Keystone Bituminous Coal Ass'n v. DeBenedictis*
    480 U.S. 470 (1987) .......................................................... 19

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Pochiro v. Prudential Ins. Co. of America*
   827 F.2d 1246 (9th Cir. 1987) ............................................................ 8

*Protect Our Water v. Flowers*
   377 F. Supp. 2d 882 (E.D. Cal. 2004) .............................................. 16

*Pueblo of Santa Ana v. Kelly*
   104 F.3d 1546 (10th Cir. 1997) ........................................................ 20

*Republic of Philippines v. Marcos*
   862 F.2d 1355 (9th Cir. 1988) ............................................................ 5

*Rhode Island v. Narragansett Indian Tribe*
   19 F.3d 685 (1st Cir. 1994) ......................................................... 16, 18

*Rhode Island v. Narragansett Tribe of Indians*
   816 F. Supp. 796 (D. R.I. 1993 ..................................................... 3, 4, 6

*Rincon Band of Luiseno Mission Indians v. Schwarzenegger*
   602 F.3d 1019 (9th Cir. 2010) .................................................... passim

*Robi v. Five Platters, Inc.*
   838 F.2d 318 (9th Cir. 1988) ............................................................. 8

*Stop H-3 Ass'n v. Volpe*
   353 F. Supp. 14 (D. Haw. 1972) ....................................................... 17

*Verizon Commc'ns, Inc. v. F.C.C.*
   535 U.S. 467 (2002) ......................................................................... 19

*Voggenthaler v. Maryland Square, LLC*
   No. 18-cv-01618-RCG-GWF, 2010 WL 1553417 (D. Nev. Apr.
   14, 2010) ........................................................................................... 8

*Winter v. Natural Resources Defense Council*
   555 U.S. 7 (2008) ............................................................................... 5

**TABLE OF AUTHORITIES**
(continued)

**Page**

STATUTES

25 U.S.C.
§ 2703(5)..................................................................... 6
§ 2710(d)(3)(A) ....................................................... 6, 10
§ 2710(d)(3)(C)............................................................ 20
§ 2710(d)(7) ............................................................. 1, 3
§ 2710(d)(7)(B)(iv)...................................................... 3, 14
§ 2710(d)(7)(B)(vii)......................................................... 15

CONSTITUTIONAL PROVISIONS

Cal. Const.
art. IV, § 19(f) ............................................................ 10

COURT RULES

Federal Rule of Appellate Procedure
8 ............................................................................ 1

Federal Rule of Civil Procedure
13(a) ........................................................................ 8
56(f) ................................................................... 5, 8, 9

OTHER AUTHORITIES

75 Fed. Reg. 38,833 (Jul. 6, 2010)........................................ 17

S. Rep. No. 100-446 (1988)................................................. 10

iv

# INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 8, Appellant/Cross-Appellee State of California (State) requests this Court to stay further proceedings in the district court until the State's appeal and Appellee/Cross-Appellant Big Lagoon Rancheria's (Big Lagoon or Tribe) cross-appeal are final. The requested stay is essential to preserve the status quo and prevent the State from suffering irreparable injury before this Court makes a final determination on the State's appeal of the district court's ruling that the State failed to negotiate in good faith with Big Lagoon for a class III gaming compact, as required by the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2710(d)(7). Absent a stay the State will be forced either to offer the Tribe or a mediator compact terms it does not believe are in the best interests of its citizens, or passively allow the Tribe and the Secretary of the Interior (Secretary) to establish class III gaming procedures that serve the Tribe's interests alone by refusing to accept such terms. Similarly, the Tribe's cross-appeal of the district court's ruling that the State can negotiate for environmental mitigation should be resolved before the parties are ordered to comply with IGRA's remedial scheme. The State's harm could be compounded because Secretarial procedures can be imposed on the State before the appeals are decided, thereby possibly rendering the appeals moot, or rendering ineffective any relief granted by this Court.

The State has a fair chance of success on appeal because the district court erroneously precluded the State from developing its defense and pursuing a compulsory counterclaim against the United States that either the land where the Tribe proposes to locate its casino is not lawfully its trust land, or that the Tribe is not lawfully recognized. Several courts have held that these jurisdictional questions should be decided at the outset but here the district court ignored evidence of the United States' unlawful acts and denied the State an opportunity to complete discovery and defend this case.

Also, there is at least a fair chance that this Court could agree with the State that *Rincon Band of Luiseno Mission Indians v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010) (*Rincon*), upon which the district court relied, is distinguishable and that the court erred in finding the Tribe is entitled to a compact, that the State must make meaningful concessions to receive environmental protection, or that the State failed to offer such concessions in this case. These questions either have not been decided previously or have been decided contrary to the district court. Consequently, and because the Tribe's only injury is to wait for the appellate process to conclude to possibly start building and operating a casino with an unknown number of Gaming Devices (or slot machines) and a hotel of unknown capacity, the balance of hardships tips sharply in the State's favor.

Moreover, the public interest in protecting the environment, preserving the

State's financial integrity, providing public services, and affording proper regard to the State's ability to fully negotiate with the Tribe to protect its legitimate interests could suffer irreparably without a stay. Indeed, this Court recognized the likely harm to the State absent a stay when, under similar circumstances, it granted stays before issuing a decision in *Rincon* and after, while the State's petition for writ of certiorari is pending.

## BACKGROUND

Big Lagoon claims the State violated IGRA, 25 U.S.C. § 2710(d)(7), by failing to negotiate in good faith for a class III gaming compact. On November 22, 2010, the district court granted the Tribe's motion for summary judgment and denied the State's cross-motion for summary judgment, finding the State failed to negotiate in good faith. (Decl. of Randall A. Pinal in Sup. Mot. for Stay (Pinal Decl.) Ex. A (Order).) The court initiated IGRA's remedial procedures and ordered the parties to conclude a compact within sixty days. (*Id.* at 25.) If they failed to do so, then within the next thirty days the parties were to submit a proposed compact to the court, along with a joint proposal for a mediator under 25 U.S.C. § 2710(d)(7)(B)(iv), or separate proposals if they could not agree on a mediator. (*Id.* at 25-26.) Under IGRA, the mediator chooses the proposed compact that best comports with IGRA's terms, any other applicable federal law and the district court's order. 25 U.S.C. § 2710(d)(7)(B)(iv). If, within the next

3

sixty days, the State does not consent to the compact selected by the mediator, the mediator would notify the Secretary, who then, in consultation with Big Lagoon, would prescribe procedures under which Big Lagoon may conduct class III gaming in California. *See id.* § 2710(d)(7)(B)(vii).

Both parties appealed and the State filed a motion to stay proceedings pending appeal. The district court denied the motion on January 27, 2011, and granted the parties an additional sixty days from that date to conclude a compact, or thereafter submit mediator proposals in accordance with its previous Order. (Pinal Decl. Ex. B.)

## LEGAL STANDARD

In ruling on a motion for stay pending appeal, this Court employs a sliding scale test. "At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury." *Golden Gate Rest. Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008) (citation omitted). "At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* (citation omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success

decreases." *Id.* (citation omitted).[1]  Indeed, the applicant need only demonstrate a

"fair chance of success on the merits."  *Republic of Philippines v. Marcos*, 862

F.2d 1355, 1362 (9th Cir. 1988) (citations omitted).  Further, the Court separately

considers whether a stay is in public interest.  *Golden Gate*, 512 F.3d at 16.

## ARGUMENT

### I.    THERE IS A FAIR CHANCE THE STATE WILL PREVAIL ON APPEAL AND IT COULD BE IRREPARABLY INJURED WITHOUT A STAY

#### A.    The State Has a Fair Chance of Success on Appeal.

##### 1.    The District Court Erred by Precluding the State From Demonstrating Big Lagoon Lacked Standing.

Pursuant to Federal Rule of Civil Procedure 56(f), the State sought to

continue the Tribe's summary judgment motion to allow the State to complete

discovery for evidence demonstrating that the Tribe lacked standing.  The district

court denied the State's motion on grounds that the State did not dispute the United

States currently recognizes the Tribe or that it currently holds in trust an eleven-

acre parcel where the Tribe proposes to conduct gaming.  (Order at 19.)  Therefore,

according to the district court, the Tribe is entitled to good faith negotiations with

---

[1] In this Circuit the sliding scale for granting a preliminary injunction remains in effect after the Supreme Court decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).  *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052 (9th Cir. 2010).  Because this Court also utilizes this test to determine stays pending appeal, *Golden Gate*, 312 F.3d at 1115-16, it is still valid for that purpose as well.

the State toward a gaming compact. (*Id.*) While the United States currently recognizes the Tribe and holds land in trust for the Tribe, the issue is whether that recognition and trust acquisition were lawful. If, as the State's undisputed preliminary evidence suggests, the land should not be in trust, or the Tribe is not lawfully recognized, then it would not be an eligible "Indian tribe" with "Indian lands," as those terms are defined by IGRA, 25 U.S.C. §§ 2703(5), 2710(d)(3)(A), and would not meet IGRA's jurisdictional requirement to request compact negotiations, or be entitled to any relief under IGRA, *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 778 (9th Cir. 2008) (state need not negotiate with tribe lacking "Indian lands," and tribe without "Indian lands" cannot sue under IGRA). Because courts routinely resolve these jurisdictional questions before deciding other issues, the district court erred in preventing the State from developing this defense and ignoring these jurisdictional failures.

For example, in *Rhode Island v. Narragansett Tribe of Indians*, 816 F. Supp. 796, 800, 806 (D. R.I. 1993), *aff'd sub nom. Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685 (1st Cir. 1994), the court first decided the complicated "Indian lands" question before ordering the state to submit to initial compact negotiations. In *Kansas v. United States*, 249 F.3d 1213, 1227-28 (10th Cir. 2001), the court held that determining whether a tribe has eligible "Indian lands" is paramount:

> We believe the State of Kansas' interests in adjudicating the applicability of IGRA, and the ramifications of such adjudication, are

6

> sufficient to establish the real likelihood of irreparable harm if the
> Defendants' gaming plans go forward at this stage of the litigation.
> [¶] [W]e believe the threatened injury to the State outweighs any
> harm the preliminary injunction might cause the Government. We are
> mindful that the Miami Tribe, its officials, and Butler National desire
> to begin constructing a gaming facility and reaping its economic
> benefits on a tract of land the Tribe claims as its own. These
> Defendants will be entitled to proceed with their plans, however, only
> if the tract qualifies as "Indian lands" under IGRA. *The answer to this
> question will affect the sovereign rights and regulatory powers of all
> involved.*

(Emphasis added.) *See also Comanche Nation v. United States*, 393 F. Supp. 2d

1196, 1211 (W.D. Okla. 2005) (finding it in the public interest to resolve IGRA

jurisdictional issues before introducing class III gaming at proposed site to avoid

"jurisdiction and other complexities and questions as to the rule of law to be

applied to the public at the gaming facility").

Here, the State's preliminary, undisputed evidence demonstrated that the

Tribe was not a recognized tribe under federal jurisdiction in 1934, and that its

current members did not live on the rancheria in 1934, or descend from the original

rancheria occupants. (Pinal Decl. Ex. C at 14-18, 21-24.) Thus, according to

*Carcieri v. Salazar*, 129 S. Ct. 1058, 1060-61, 1064-65, 1068 (2009), the Tribe was

not a proper beneficiary of the trust acquisition where it proposes to site its casino.

The State should not be forced to negotiate for a casino located on land unlawfully

acquired in trust, and it should have been allowed to conduct further discovery so it

could file a claim against the United States to resolve any dispute about the land's

7

status in this action.  *See, e.g., Voggenthaler v. Maryland Square, LLC*, No. 18-cv-01618-RCG-GWF, 2010 WL 1553417, at \*4-\*5, \*10-\*11 (D. Nev. Apr. 14, 2010) (further inquiry about legitimacy of third party complaint is proper grounds for extending discovery pursuant to Rule 56(f)).  The same result should obtain concerning evidence showing there is a material question whether the United States has lawfully recognized the Tribe.  (*See* Pinal Decl. Ex. C at 24-25.)

Indeed, the State could be unable to make these claims in the future because they are compulsory counterclaims that "arise[] out of the transaction or occurrence that is the subject matter of" Big Lagoon's claim.  *See* Fed. R. Civ. P. 13(a).  In determining whether a claim is compulsory, this Court applies the "logical relationship test" to "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues should be resolved in one lawsuit."  *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987).  Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (citations omitted).  A defendant that fails to bring a compulsory counterclaim is barred from asserting that claim in a future proceeding.  *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974).

It is from documents produced by the United States in discovery in this case that the State first became aware of questions concerning the Tribe's status and whether the United States lawfully acquired the eleven-acre parcel in trust. Because a tribe must be a lawfully recognized "Indian tribe" and lawfully have eligible "Indian lands," as those terms are defined by IGRA, before it can obtain relief under the Act, the essential facts of the Tribe's action and a claim by the State against the United States are logically related. Thus, the district court erred in denying the State's request to continue the motion to allow it to discover information essential to its opposition.[2] *See* Fed. R. Civ. P. 56(f).

### 2.    The District Court Erred in Following *Rincon*.

The district court found *Rincon* controlling because, as in that case, the State requested revenue sharing payments to go to the general fund.  (Order at 14.)  But this case is distinguishable because Big Lagoon, unlike the tribe in *Rincon*, does not have an existing compact and has not offered anything to the State for the rights granted under Proposition 1A.  The district court mistakenly found that Proposition 1A entitles the Tribe to a compact.  (*Id.* at 17.)  It does not.  Instead, it

---

[2] After briefing concluded on the cross-motions for summary judgment, the State received from the United States a document confirming that the United States purchased the Tribe's purported nine-acre rancheria for a family rather than a recognized band of Indians, and new information concerning a central figure in the Tribe's history that is critical to the State's genealogical research.  (Pinal Decl. ¶¶ 5-9, Exs. D-E.)  This confirms discovery was incomplete and the district court should have allowed the State to complete discovery to develop its defense.

merely grants the Tribe the exclusive right to negotiate for a compact. *See* Cal. Const. art. IV, § 19(f). And neither the constitution nor IGRA guarantees a compact will be reached. *See* S. Rep. No. 100-446, at 14 (1988), *as reprinted in* 1998 U.S.C.C.A.N. 3071, 3084. At most, IGRA requires the State to negotiate in good faith. 25 U.S.C. § 2710(d)(3)(A). The district court's additional reasons why *Rincon* is controlling (Order at 17) may be moot depending on the outcome of the State's pending petition for writ of certiorari in that case (*see id.* at 14 n.3).

### 3. The District Court Misconstrued *Rincon* to Require the State to Make Meaningful Concessions to Obtain Environmental Protection. Nonetheless, the State Offered Valuable Concessions to Big Lagoon.

In *Rincon* this Court held that the State did not offer a "meaningful concession" in exchange for general fund revenue sharing demands. (Order at 15:19-21.) But the district court cited no authority for the proposition that negotiations for environmental mitigation are analyzed under the same standards as negotiations for revenue sharing provisions. To require the State to offer meaningful concessions in exchange for environmental protection reflects an unprecedented expansion of *Rincon* and *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1112 (9th Cir. 2003) (*Coyote Valley II*) (where a state offers "meaningful concessions in return for fee demands, it does not exercise authority to impose anything").

In any event, even if the State were required to make meaningful concessions

10

in exchange for environmental protection, it did so here by offering the Tribe rights to operate up to 349 Gaming Devices, with the option of requesting a compact amendment if it needed additional devices, and continued receipt of $1.1 million in annual Revenue Sharing Trust Fund (RSTF) distributions. (Order at 24:10-13.) The district court found that neither offer was related to environmental mitigation, and instead appeared to have been offered in exchange for revenue sharing. (*Id.* at 24:13-17.) On the contrary, the State proposed that, "[d]ue to the environmentally sensitive nature of the Tribe's rancheria site," it would agree to a smaller facility with economic provisions that included a specific number of Gaming Devices and continued receipt of RSTF distributions. (Pinal Decl. Ex. F at 2.) The number of authorized Gaming Devices directly affects a casino's size and, indirectly, the size of any related hotel and supporting infrastructure. The State's principal concern was that Big Lagoon insisted on locating its entire development project on the eleven-acre parcel, rather than mitigating the environmental harm by spreading it between the nine- and eleven-acre parcels. (*Id.* Ex. C at 19, Ex. G at 4-5.)

Regardless, the concessions the State originally offered for revenue sharing should have been considered meaningful concessions for environmental mitigation where, as here, the district court ruled that the State's concessions could not be counted as concessions for revenue sharing. Even if a concession may not be utilized for two purposes, if it cannot be used for one purpose, then it should be

11

available for the other, especially where the district court found that, under *Rincon*, it is improper to consider the State's motivation in making an offer.

The district court also found that even if these purported concessions were connected to a request for environmental mitigation, the State did not provide any context or comparison to show they were meaningful. (Order at 24:18-22.) There is a fair chance that this Court could find that continued receipt of $1.1 million annually for an eighteen-member tribe that also operates other successful businesses, in addition to whatever revenue 349 Gaming Devices would generate for the Tribe, recognizing that with a compact the Tribe would enjoy exclusive rights to operate lucrative class III Gaming Devices free from non-tribal competition in the most populous state in the country, *see Coyote Valley II*, 331 F.3d at 1114-15, are meaningful concessions per se.

Last, the Tribe's cross-appeal challenging the district court's finding that under IGRA the State could negotiate for environmental mitigation should be resolved before the parties proceed with IGRA's remedial provisions. Until the cross-appeal is decided, the parties, the mediator and the Secretary are left with the unresolved question whether the State may lawfully negotiate for environmental mitigation. If the Tribe succeeds in its cross-appeal, then the State may not request mitigation and the parties' proposals to each other and the mediator, or any subsequently imposed Secretarial procedures, would look markedly different from

12

any terms that the parties reach or are imposed before that issue is decided.  In

essence, the Tribe's cross-appeal belies any argument that a stay is unwarranted.

For the Tribe to argue otherwise would suggest its cross-appeal is frivolous.

### B.    Without a Stay, the State Faces Irreparable Injury to Its Legitimate Interests.

The Order requires the State to choose between offering compact proposals to

the Tribe that do not serve its citizens' best interests, before this Court determines

that the State may not seek to protect its interests in the manner it proposed during

compact negotiations, or to decline to make any proposals whatsoever and suffer

the prospect that the Secretary will unilaterally impose procedures that suit the

Tribe's exclusive interests.  The statutory remedial process initiated by the district

court almost certainly will conclude before the State's appeal is final.[3]  A stay is

essential to preserve the State's right to meaningful consideration and action on its

appeal, otherwise the State could be bound by the outcome of IGRA's remedial

process before there has been a final determination whether initiation of that

process was even appropriate.  Such a result could render the State's appeal moot

and any appellate decision in the State's favor ineffective inasmuch as a compact

---

[3] This Court anticipates oral argument in civil appeals to occur about twelve to twenty months from the notice of appeal date. http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000084 (last viewed Dec. 6, 2010).  Most cases are decided within three months to a year after argument.  *Id.*  If rehearing is requested, this process could take longer.  *Id.*  A petition for writ of certiorari would extend the process.

or Secretarial procedures would, by definition, exclude provisions an appellate decision in the State's favor would authorize. Moreover, the Tribe could be authorized to operate an unknown number of slot machines in a facility that could cause significant damage to environmentally sensitive state lands before a decision is made on the merits of the cross-appeals—irreversible damage that no judicial action could cure.

In addition, the State could be harmed irreparably if it is bound by a compact or Secretarial procedures that do not reflect legitimate State interests and the Tribe, consistent with its previous negotiation position, commenced gaming operations without making any revenue sharing payments to the State,[4] which an appellate court following *Coyote Valley II*, 331 F.3d at 1111-15, and *Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095, 1101 (9th Cir. 2006), could later find were required.

Indeed, there is no mechanism available to assure compact provisions or Secretarial procedures that could make the State whole in the event it were to prevail on appeal. The district court's role under IGRA's remedial scheme is simply to order the conclusion of a compact or appoint a mediator. 25 U.S.C. § 2710(d)(7)(B)(iv). It cannot order the parties to include terms covering all

---

[4] The Tribe refused to share revenue with the State and proposed only to contribute to the RSTF, which is reserved for distribution to federally recognized tribes conducting limited or no gaming. (*See* Order at 11:15-22.)

14

conceivable judicial outcomes, a mediator to adopt a compact with such terms, or the Secretary either not to adopt procedures until the district court authorizes him to do so or to include specific terms in those procedures.  Likewise, IGRA does not authorize the district court to prevent a mediator or the Secretary from acting once a mediator has been appointed.  Thus, no mechanism exists for the district court to impose a stay should the Tribe, the mediator, or the Secretary not include protective measures in a compact or procedures.  Further, while Secretarial procedures must comply with IGRA and federal law, nothing requires the Secretary to conform procedures to a subsequent appellate decision.  *See* 25 U.S.C. § 2710(d)(7)(B)(vii).  Moreover, procedures are imposed following Secretarial consultation with the Tribe only—the Secretary need not consult the State or consider its legitimate interests.  *Id.*

This case is similar to *Kansas v. United States*, 249 F.3d at 1227-28, in that the State's "interests in adjudicating the applicability of IGRA, and the ramifications of such adjudication, are sufficient to establish the real likelihood of irreparable harm if the [the tribe's] gaming plans go forward at this stage of the litigation," and "[t]he answer to this question will affect the sovereign rights and regulatory powers of all involved."

## II.   THE STATE'S APPEAL RAISES SERIOUS LEGAL QUESTIONS AND THE BALANCE OF HARDSHIPS TIPS SHARPLY IN THE STATE'S FAVOR

### A.    The State's Appeal Raises Serious Legal Questions.

The district court's decision to deny the State an opportunity to complete discovery to develop its defense that Big Lagoon may not be lawfully recognized, or that its land is ineligible for gaming, raises a substantial question whether Big Lagoon has standing to bring this action, or is entitled to conduct class III gaming on the eleven acres.  (*See* argument I(A)(1), *supra*.)  As noted, several courts have required jurisdictional issues to be resolved before tribes are allowed to take any action toward conducting gaming.  *See Rhode Island v. Narragansett Indian Tribe*, 19 F.3d at 688;[5] *Kansas v. United States*, 249 F.3d at 1227-28; *Comanche Nation v. United States*, 393 F. Supp. 2d at 1211.

The district court's decision to follow *Rincon* here raises a serious legal question because no court has found that a tribe without an existing compact, and which has not offered the State any consideration for benefits obtained by Proposition 1A, is entitled to a compact.  Similarly, the district court is the first to find that a state must make "meaningful concessions" when negotiating for environmental mitigation.  (*See* argument I(A)(3), *supra*.)  Because the district court charted new and unexplored ground and adopted novel interpretations of the law, *see Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004);

---

[5] The district court stayed its order after the state appealed.  *Rhode Island v. Narragansett Tribe*, 19 F.3d at 691.

*Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 16 (D. Haw. 1972), these questions are ripe for appellate review.

In addition, the Secretary's inconsistent actions on two compacts after this Court decided *Rincon* suggest the legality of general fund revenue sharing is unsettled.  This Court decided *Rincon* in April 2010.  *Rincon*, 602 F.3d at 1019.  In July 2010, the Secretary affirmatively approved a class III gaming compact between Florida and the Seminole Tribe.  75 Fed. Reg. 38,833 (Jul. 6, 2010).  The compact specifies that the appropriation of revenue sharing payments made by the tribe to the state lies within the Legislature's "exclusive prerogative."  (Pinal Decl. Ex. H at 24, ¶ 11(B).)  The governor that signed the compact "recommends" that a certain percent of state revenue go toward funding certain programs (*id.* at 24-25), but Florida's Legislature is not obligated to make those distributions.  There is serious doubt whether Florida's unrestricted ability to utilize tribal gaming revenue sharing payments is any different from the facts in *Rincon*, yet the Secretary affirmatively approved the Seminole Tribe-Florida compact as consistent with IGRA.  (*Id.* Ex. I.)  On the other hand, in August 2010 the Secretary disapproved a proposed compact between California and a tribe that included general fund revenue sharing provisions like those at issue here and in *Rincon*.  (*Id.* Ex. J.)  The Secretary's inconsistent positions on compacts that allow for unrestricted use of tribal revenue sharing payments to states indicates the question remains unsettled.

17

**B.    The Balance of Hardships Favors the State.**

The Tribe's only injury is a delay in the start date for possible operation of an unknown number of slot machines on unknown terms.  Thus, any injury to the Tribe is speculative and abstract.  *See Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674-75 (9th Cir. 1988) (speculative injury does not constitute irreparable injury).  Similar to *Kansas v. United States*, 249 F.3d at 1227-28, the threatened injury to the State in allowing the Tribe to proceed with gaming before adjudicating IGRA's applicability outweighs any harm of delayed operation of a gaming facility because the Tribe would only be entitled to proceed if the land qualified as "Indian lands" under IGRA.

Moreover, the district court offered no legal or equitable justification for Big Lagoon to be put in a better position than the Rincon Band.  Although *Rincon* currently is controlling Circuit authority, the mandate is stayed pending a determination on the State's petition for writ of certiorari.  (Order at 14 n.3.)  Big Lagoon should not be allowed to take advantage of *Rincon* when the Rincon Band cannot even do so.

**III.   THE PUBLIC INTEREST WOULD BE SERVED BY GRANTING THE STAY**

As the courts in *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d at 688, *Kansas v. United States*, 249 F.3d at 1227-28, and *Comanche Nation v. United States*, 393 F. Supp. 2d at 1211, each held, litigating IGRA's jurisdictional

questions first is paramount and it would be against the public interest not to do so.

It is "in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Golden Gate Rest. Ass'n*, 512 F.3d at 1127 (citation omitted). This Court has recognized that environmental protection is in the public interest. *Alliance for Wild Rockies*, 622 F.3d at 1056. Allowing the Tribe to proceed with developing a project that could significantly impact environmentally sensitive state lands before this appeal is resolved would subvert the public interest.

In addition, this Court has held that in compact negotiations the State has a legitimate economic interest in raising revenue for its citizens. *Coyote Valley II*, 331 F.3d at 1115 (citing S. Rep. No. 100-446, at 13, *as reprinted in* 1988 U.S.C.C.A.N. at 3083-84). Similarly, there is public interest in protecting the financial integrity of public institutions and the provision of public services. *Verizon Commc'ns, Inc. v. F.C.C.*, 535 U.S. 467 (2002); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987); *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413 (11th Cir. 1998). Therefore, denying a stay would be inconsistent with the public interest in protecting the State's fiscal health.

Further, IGRA's legislative history reflects a Congressional intent to establish a finely balanced statutory system that contemplates stable, long-term tribal-state

19

relationships fostered through compacts that embody the parties' considered interests through mutually agreed-upon terms.  *See* 25 U.S.C. § 2710(d)(3)(C); *Coyote Valley II*, 331 F.3d at 1108-09 (quoting S. Rep. No. 100-446, at 13-14, *as reprinted in* 1988 U.S.C.C.A.N. at 3083-84); *see also Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1554 (10th Cir. 1997) (discussing Sen. Rep. No. 100-446 and state interests in IGRA compacting process).  Because IGRA does preclude an appeal of a bad faith finding, or a stay pending appeal, it does, by itself, not mandate immediate implementation of its remedial procedures.  Indeed, the district court and this Court in *Rincon*, under similar circumstances, stayed not only the district court proceedings pending appeal but also issuance of the mandate pending Supreme Court consideration of the State's petition for writ of certiorari.  (*See* Pinal Decl. Ex. K; Order at 14 n.3)

## CONCLUSION

For the foregoing reasons, the State respectfully requests this Court to stay further proceedings in the district court.

Dated:  February 3, 2011          Respectfully submitted,
                                  KAMALA D. HARRIS
                                  Attorney General
                                  SARA J. DRAKE
                                  Senior Assistant Attorney General

                                  S/ Randall A. Pinal
                                  _____
                                  RANDALL A. PINAL
                                  Deputy Attorney General
                                  *Attorney for Appellant/Cross-Appellee State of California*

20